UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT L. BUGGS, Individually and in His Capacity as a Registered Voter, and LARONA CARTER, Individually and in Her Capacity as a Registered Voter,<br><br>Plaintiffs,<br><br>vs.<br><br>DR. PAIGE McNULTY, Individually and in Her Capacity as Emergency Manager; NICOLE WOLVERTON, Individually and in Her Capacity as Chief Financial Officer; NICOLE BRADLEY, Individually and in Her Capacity as Chief Academic Officer and Title I Director, MICHELLE R. FAJMAN, in Her Capacity as Director of Lake County Board of Elections and Registration,<br><br>Defendants. | Cause No. 2:20-cv-406-PPS-JEM |

**OPINION AND ORDER**

The Gary Community School Corporation is facing dire financial issues. In an effort to address those concerns, the GCSC caused a referendum to be placed on the ballot in the November 2020 election to help address the financial catastrophe plaguing the schools. Two citizens of Gary, Plaintiffs Robert L. Buggs and Larona Carter, are balking. Their principal complaint relates to the way the referendum was placed on the ballot. But the case is in odd procedural posture. It wasn't filed in a court. Instead, the amended complaint was filed before the Lake County Board of Elections and Registration. It alleges violations of state elections laws and various constitutional provisions. But a review of the Second Amended Complaint shows that, although there

are some fleeting references to the U.S. Constitution, what is really at the core of this dispute is the manner in which the Gary Community School Corporation is financed, the perceived inequities in that process and the way the issue was placed before the electorate. [DE 4.] Buggs and Carter ask the Board to void the results of the referendum and make specific findings regarding campaign law violations. [DE 4 at 3, 27.]

Three of the four defendants work for the GCSC—Dr. Paige McNulty, Nicole Wolverton, and Nicole Bradley (a/k/a Kimberly Bradley[1]). Those defendants sought removal of this matter to federal court. The fourth defendant, Michelle Fajman, is the Executive Director of the Lake County Board of Elections and Registration. Fajman did not consent to the removal (although she did not specifically object to it either). When the case landed on my desk, the whole thing struck me odd. So after review of the pleadings, I ordered the parties to submit briefs addressing two issues: (1) whether the Board of Elections and Registration can be sufficiently characterized as a "state court" for federal removal purposes; and (2) "whether the state's interest in providing a special forum for adjudication of this removed action is substantially greater than the state's interest in maintaining any court system, and whether it outweighs [defendants'] interest in removing the action to the federal court." *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 711-12 (7th Cir. 2000). For the reasons outlined below, I find that this case was improperly removed and will therefore **REMAND** it back to the Lake County Board of Elections and Registration.

---

[1] Plaintiffs correct Nicole Bradley's name to Kimberly Bradley in their recent brief. [DE 23 at 2.]

2

## Background

During the November 3, 2020 election, a ballot referendum asked voters to increase the tax rate to provide additional funds to the Gary Community School Corporation. Buggs, both individually and as a voter in Gary, Indiana, filed a complaint with the Lake County Board of Elections and Registration arguing that this referendum violated state election law and his constitutional rights. Carter, another Gary voter, joined as a plaintiff in an amended complaint. Defendants include McNulty, Wolverton, and Bradley, all of whom work for the Gary Community School Corporation, and Fajman, the Director of the Board of Elections and Registration.

Plaintiffs' main claim is that McNulty used her appointed position as Interim Emergency Manager on GCSC's advisory board to pursue a referendum and that she lacked the authority to do so because referenda may only be pursued by a governing body. [DE 4 at 23]; Ind. Code § 20-46-1-13. GCSC used to have a governing body, but now only has an advisory board. [DE 4 at 23.] Plaintiffs claim the advisory board does not have the legislative power to tax citizens or seek a referendum from the circuit court clerk. *Id.* at 23-24. Plaintiffs argue that the referendum and an improperly filed CFA-4 report, which details receipts and expenditures of a political committee, violated Indiana state election campaign laws. *Id.* 23-25, 27. Plaintiffs further claim that their constitutional right to free speech was violated when the GCSC Defendants denied public comment during two meetings which proposed GCSC's budget and the ballot referendum. *Id.* at 26-27. Plaintiffs seek relief from the Lake County Board of Elections

and Registration, requesting it void the referendum and make specific findings that the GCSC Defendants violated campaign laws. *Id.* at 23-27.

On November 13, 2020, the GCSC Defendants removed this action to federal court under 28 U.S.C. § 1441(a), because the Lake County Board of Elections and Registration sits in Crown Point, which is within the Northern District of Indiana. [DE 1 at ¶ 3-4.] Because of the references in the amended complaint to various constitutional violations, the GCSC Defendants believe the case is properly in federal court. *Id*. In response to my Order referenced above, the GCSC Defendants filed a brief in support of removal. [DE 21.] The Plaintiffs and Defendant Fajman object to removal, believing the case should be remanded. [DE 22, 23.]

## Discussion

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal to federal court from a state agency can be proper but only under the limited circumstances that the agency essentially operates as a state court. *Floeter v. C. W. Transp.*, 597 F.2d 1100, 1102 (7th Cir. 1979). The state's interest in providing a specialized forum for this type of dispute must be weighed against the state's interest in maintaining the court system and defendant's interest in removal to federal court. *Wirtz,* 224 F.3d at 711-13. For starters, it's worth remembering that "[t]he removal statute should be construed narrowly and any doubts about the propriety of removing

4

a particular action should be resolved against allowing removal." *Id.* at 715 (Ripple, J., concurring).

In *Floeter*, fourteen employees filed an action against their employer and local union with the Wisconsin Employment Relations Commission (WERC) and that action was removed to federal court. *Floeter*, 597 F.2d at 1101. The employees claimed the union and employer violated the collective bargaining agreement. *Id.* On appeal, the Seventh Circuit determined that WERC could be considered a state court for purposes of removal by evaluating "the functions, powers, and procedures of the state tribunal and consider[ing] those factors along with the respective state and federal interests in the subject matter and in the provision of a form." *Id.* at 1102. In applying this functional test, the *Floeter* court found that the breach of the collective bargaining contract and unfair representation claims could have been brought in either state or federal court but would ultimately be determined by federal law. *Id.* It found that WERC's "procedures are substantially similar to those traditionally associated with the judicial process." *Id.* Furthermore, the Supreme Court of Wisconsin recognized that WERC is vested with judicial power. *Id. Floeter* also "stress[ed], however, that our holding is limited by the facts of this case." *Id.*

Two decades later, the Seventh Circuit expanded on *Floeter* and considered whether the Illinois Liquor Control Commission (ILCC) could be considered a state court for removal purposes. *Wirtz*, 224 F.3d at 712-16. In *Wirtz*, a distributor and a supplier of alcoholic beverages entered into an exclusive distribution contract in Illinois for a term of seven years. *Id* at 709. After the contract was finalized, the Illinois

5

legislature passed the Fair Dealing Act which favored distributors over suppliers. *Id.* The distributor breached the contract and the supplier sued in Connecticut. *Id.* The distributor filed an action with the ILCC and the supplier removed it to federal court. *Id.* at 710. The Seventh Circuit determined that the ILCC was not a state court for removal purposes, because the ILCC's authority exceeded that of a regular court in some respect, but did not include certain traditional court functions, such as conducting jury proceedings. *Id.* at 712. Additionally, the governor appoints ILCC members, who are not required to be lawyers, to less than full time positions. *Id.* at 713. In his concurrence, Judge Ripple delved deeper into the ILCC's functions, powers, and procedures. *Id.* at 714 (Ripple, J., concurring). Unlike a state court, the ILCC dealt with specialized issues regarding liquor including: granting and revoking licenses, setting standards for manufacturing, inspecting manufacturing, warehouse, and retail premises, and regulating supplier conduct. *Id.* Further, the Illinois legislature prevented courts from interfering with the ILCC's decisions unless a full hearing was held and final decision was made on the merits. *Id.* (citing 815 Ill. Comp. Stat. 725/35(f)). Ultimate review of ILCC's decisions may be made by state courts under Illinois' administrative procedure law. 815 Ill. Comp. Stat. 725/35(e). "The Constitution does not sanction unwarranted intrusions into state matters without a justifiable constitutional basis even if the federal government might believe it could do as well or better." *Wirtz*, 224 F.3d at 713.

Guided by *Floeter* and *Wirtz*, I must consider whether the Lake County Board of Elections and Registration can be sufficiently characterized as a state court for removal

purposes by evaluating "the functions, powers, and procedures of the state tribunal and consider[ing] those factors along with the respective state and federal interests in the subject matter and in the provision of a forum." *Floeter*, 597 F.2d at 1102. When considering this separation of powers principle, executive branch agencies have different authority and limitations than those imposed on the judicial branch. While the Board need not have powers identical to a state court for removal purposes, it must essentially operate as a state court.

Let's start by looking at the authority and limitations placed on the Board by the Indiana legislature. As an executive agency, the Board receives its authority under Ind. Code §§ 3-6-5 and 3-6-5.2, and its powers and duties are outlined in these and additional statutes. The legislature granted the Board the power to conduct all elections and administering election laws within Lake County (except town conventions and municipal elections in certain small towns), prepare and distribute all ballots, and notify the county chairman of each political party that the ballots are available for inspection. Ind. Code §§ 3-6-5-14, 3-6-5.2. The Indiana legislature further granted the Board and its Director with elections-related powers and duties of the county election board, the board of registration, the circuit court clerk, and the county executive. Ind. Code § 3-6-5.2-6. Disputes concerning elections and voter registration are brought to the Board for a decision. The Board may examine witnesses under oath and any member may administer the oath. Ind. Code § 3-6-5-26. The Board may issue subpoenas to compel documents and testimony from witnesses about election matters. Ind. Code § 3-6-5-27. The Board must provide notice and opportunity for a hearing and take appropriate

7

actions or refer matters to the Attorney General or a prosecuting attorney. Ind. Code § 3-6-5-31. The statute further provides that parties may appeal a decision to a circuit, superior, or probate court "within thirty (30) days after the [B]oard makes the decision subject to the appeal." Ind. Code § 3-6-5.2-9.

The Board in this case considers and resolves issues regarding elections, which covers the gambit of federal, state, and local matters. The Board's likeness to a state court is limited to its ability to investigate allegations of election law violations, including holding hearings, investigating, or taking evidence. But the Board's composition does not resemble a court, its members do not need to be lawyers, it does not need to follow the rules of evidence, it cannot hold jury trials, and lacks other traditional judicial powers. While the Board may implement monetary penalties for violations, it may not award civil damages. Instead, it may refer election law violations to the attorney general or a prosecutive attorney. Furthermore, certain authority given to the Board in the limited area of election law exceeds that of the state court. The Board may order violators to correct errors and seek out testimonial and demonstrative evidence. Board members are appointed by county chairmen of the major political parties.

The relief requested in Plaintiffs' Amended Complaint is specific to the Board and adjudicating this matter in front of a state or federal court as an initial matter would be inappropriate. Plaintiffs want the Board to void the results of the referendum, declare that an advisory board is not a governing body per the statute, declare the CFA-4 report defective, and establish that the GCSC Defendants violated election laws and

8

constitutional rights. [DE 4 at 27.] When examining the functions, powers, and procedures of the Board, it is clear that the Board is a specialized administrative agency that cannot be considered a court for removal purposes.

What's more, the State of Indiana certainly has a strong interest in providing a specialized forum for election matters. That is precisely what the Indiana legislature did when it created the Board through statute. Ind. Code § 3-6-5-1. The Board is charged with the responsibility of overseeing elections. Ind. Code §§ 3-6-5-14 and 3-6-5.2-6. As an adjunct to that, it provides a forum for parties to adjudicate their disputes and, in the event a party disagreed with the Board's decision, the ability to appeal the matter in state court. Ind. Code § 3-6-5.2-9.

Plaintiffs' claims stem from alleged actions regarding the state and local election process. Plaintiffs seek to void a referendum, which asked Gary, Indiana residents whether to increase taxes to benefit the GCSC. Plaintiffs seek a declaration from the Board on a state election law issue stemming from a state statute, specifically, whether the GCSC's advisory board can be considered a "governing body" per the statutory requirement to certify a question to the circuit court clerk. Ind. Code § 20-46-1-15. Plaintiffs also complain that the GCSC Defendants failed to properly file the CFA-4 form, a required Indiana state form which details receipts and expenditures of a political committee. Ind. Code § 3-9-5-14. These are all quintessential state law election matters. It's true that the Plaintiffs' have made some rather fleeting references to supposed constitutional violations relating to their ability to comment at the GCSC budget hearing and advisory board meeting. [DE 4 at 19.] But these matters are plainly

collateral to the gist of this dispute—whether the referendum was properly placed on the ballot for the electorate's consideration. The tell is Plaintiffs' prayer for relief: they seek seven specific declarations but the first six all relate to the election process. It's only once you get to the seventh prayer for relief that the plaintiffs have thrown in an opaque request for a declaration that the "Defendants have violated the constitutional rights" of the Plaintiffs. *Id*. at 27.

While the GSCS Defendants want to adjudicate this dispute in federal court, Indiana clearly provides a forum for most of the relief sought here by the Plaintiffs. I disagree with the GSCS Defendants' claim that remand would encourage others to circumvent constitutional violations by solely alleging relief associated with elections and "strip[] [the GCSC Defendants] of the right to have the alleged Constitutional violations heard by a federal forum." [DE 21 at 5-6.] It may be true that the Board is an unlikely place to be arguing about constitutional violations. But it seems to me this is a matter to be addressed *to the Board* in the form of a motion to dismiss the constitutional claims as being outside – indeed, far outside—its statutory charge.

In sum, the Lake County Board of Elections and Registration does not operate like a state court. Far from it. I find that Indiana's interest in providing a forum to adjudicate election law issues substantially outweighs the defendants interest in removing the action to the federal court.

There's one other matter to be addressed: under the federal common-law "rule of unanimity," all defendants in a case that have been properly joined and served when the case is removed to federal court must join in or consent to the removal, with the

10

exception of nominal parties. *Northern Ill. Gas Co. v. Airco Indus. Gases, Div. of Airco, Inc.*, 676 F.2d 270, 272-73 (7th Cir. 1982); *see also GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 632 (7th Cir. 2013) (citing 28 U.S.C. § 1441(a)). Here, there are four defendants and only three initially agreed with removal. [DE 1, DE 22 at 1.] The notice of removal identifies the three GCSC Defendants as "Defendants" but it makes no reference to Defendant Fajman. [DE 1.] The civil cover sheet also makes no reference to Defendant Fajman. [DE 1-3.] As the Director of the Board of Elections and Registration, it is hard to see Fajman considered as a nominal defendant. Far from it. Her agency actually put the offending referendum on the ballot.

Whether the omission of Fajman's consent to removal was by design or oversight, I do not know. But in either event, the failure constitutes a removal defect. *GE Bertz, Inc.*, 718 F.3d at 632. And indeed, Fajman now formally objects to the removal. [DE 22.] But this defect is procedural, not jurisdictional, and thus it is waivable. *City of Yorkville ex.rel. v. American Southern Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011). Plaintiff did not raise the issue within 30 days of the removal. *Id.* But it bears repeating here that when a party removes a case to federal court, it is imperative that all defendants consent in the removal. That wasn't done here. Simply consulting with Fajman, who now agrees with the remand, could have avoided this kerfuffle altogether.

## Conclusion

This matter is **REMANDED** back to the Lake County Board of Elections and Registration.

The Motion to Amend the State Court Complaint [DE 15] is **DENIED AS MOOT**.

This matter is now **CLOSED**.

**SO ORDERED on January 29, 2021.**

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT